# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | CRIMINAL ACTION 16-00138-KD |
| ) | |
| ANGIE BARNES HOWARD, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This action is before the Court on defendant Angie Barnes Howard's motion to suppress and dismiss and supporting exhibit, the United States' response, Howard's reply, the United States' supplemental response and Howard's supplemental brief in support of her motion (docs. 31, 31-1, 36, 38, 46, 47).

The motion was heard on September 13, 2016. Assistant United States Attorney Gloria Bedwell represented the United States and attorney Patrick Finnegan represented Defendant Barnes. Upon consideration of the testimony, the evidence, and the parties' arguments and supplemental briefs, and for the reasons set forth herein, the motion to suppress and dismiss is DENIED.

**I. Background**

On March 3, 2016, Howard was stopped by officers while driving a car. Fifteen minutes into the detention, Howard confessed to having methamphetamine in her car. Howard has been indicted for possession with intent to distribute this methamphetamine.

**II. Argument**

Howard states that the initial traffic stop violated her rights under the Fourth Amendment to be free of an unreasonable seizure. Howard argues that the officers did not have any basis for

stopping her simply because she was driving a red Audi. Howard points out that there were no traffic violations committed.

Howard also argues that even if there had been a legitimate basis for the initial traffic stop, her subsequent detention and questioning violated the Fourth Amendment. Howard argues that the mission of the stop was to apprehend a fugitive and when the officers knew that they had not stopped the correct person, she should have promptly been advised that she was free to leave.

Howard argues that under the exclusionary rule, all evidence obtained from this illegal traffic stop and detention – including physical evidence and statements - should be excluded.

### III. Statement of the law

A law enforcement officer may conduct a brief warrantless investigatory stop of an individual "where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). Reasonable suspicion exists when an officer has a "particularized and objective basis" for suspecting a person of criminal activity, given the totality of the circumstance. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "Reasonable suspicion need not involve the observation of illegal conduct, but does require more than just a hunch. *Lewis*, 674 F.3d at 1303; *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990) (Reasonable suspicion requires more than an officer's "inchoate hunch" that there is criminal activity).

Reasonable cause for an investigative stop can be based on information supplied by another person, and need not be based only on an officer's personal observation. *Navarette v. California*, 134 S. Ct. 1683, 1688 (2014). When an officer's purported reasonable suspicion is

based solely on a third party's tip, the court will determine whether the tip itself bore sufficient indicia of reliability to support reasonable suspicion. *Alabama v. White*, 496 U.S. 325, 330-31 (1990). "A known, albeit unproven, informant coupled with subsequent corroboration of the tip's details can justify a reasonable suspicion of criminality." *United States v. Kent*, 691 F.2d 1376, 1380 (11th Cir. 1982). When an informant has personal knowledge of a crime, including viewing the crime in progress, "[t]hat basis of knowledge lends significant support to the stop's reliability. *Navarette*, 134 S. Ct. at 1689; *see Illinois v. Gates*, 462 U.S. 213, 234 (1983).

An officer may prolong a stop for "further questioning beyond that related to the initial stop" in only two circumstances: (1) when the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring"; or (2) when "the initial detention has become a consensual encounter." *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).

**IV. Analysis[1]**

    A.   Initial Stop

On March 1, 2016, local officers were responding to a report of stolen vehicles. When the officers arrived at the location off Tanner Williams Road, several of the suspects fled. Soon thereafter, U.S. Deputy Marshal Michael Clemons received two calls, one from an inmate and one from a confidential informant. Both callers told Clemons that Clifford Inman, a fugitive wanted on a federal revocation warrant, was currently on the run from police. The callers also advised that Inman had called a third person, Michael Bonner, and asked to be picked up in the Glen Acres subdivision off Tanner Williams Road. Both described the vehicle that Bonner would be driving as a red car or red Audi. Clemons and his partner relayed this information to local

---

[1] The court finds the testimony of all witnesses to be credible.

officers.

By the time Clemons arrived in the Glen Acres subdivision, Inman had been found and detained. Inman had methamphetamine on his person. While the U.S. Deputy Marshals were taking custody of Inman, a red Audi drove by the location. Inman stated, "there goes my ride." At this point the local officers had run a check on Michael Bonner and determined that he had outstanding state warrants. In an attempt to locate Bonner, Officer Garrett Humphrey and Officer John Silcox got in their patrol car and stopped the red Audi. Neither Humphrey nor Silcox had observed the driver of the Audi prior to stopping the car.

Once the car was stopped, both officers got out and put their guns in the low/ready position. They yelled commands to the driver and approached the car. Once they saw that the driver was female, and not Bonner, Officer Humphrey explained to the driver why they had stopped the car and asked to see her I.D.

The court finds that the officers had reasonable suspicion to stop the red Audi. A similar car had been described by two sources as being the car that would pick up Inman in that area. Inman then confirmed this information by spontaneously identifying the vehicle as his ride. Moreover, the two sources identified Michael Bonner as the expected driver and the officers knew that Bonner had outstanding warrants.

B. Continued detention of Howard

The driver of the Audi, defendant Angie Barnes Howard, was visibly nervous when stopped. Officer Humphrey attempted to de-escalate the situation by returning his firearm to the holster and trying to calm Howard. Officer Humphrey then left to run Howard's license to determine whether she had any warrants before questioning her about Bonner. As he was doing so, Officer Silcox observed Howard deleting text from her phone. Silcox told Humphrey

of Howard's actions.  Also, while Humphrey was running a license check on Howard, he radioed back to the officers with Inman to ask if Inman knew Howard.  Inman said that Howard was Bonner's girlfriend.  This information gave Humphrey reasonable suspicion to believe that Howard might be involved in hiding Bonner.

When Officer Humphrey re-approached the car he gave the license back and noticed that Howard was still extremely nervous.  He then asked her about Michael Bonner.  Howard admitted that she was Bonner's girlfriend and that Bonner had sent her to pick up Inman because Bonner was trying to avoid apprehension by law enforcement.  This information gave Humphrey additional reasonable suspicion to continue to question Howard regarding Bonner.  Thus, Howard's continued detention at this point was justified.

Humphrey then asked if there was something in the car, like a pistol, making Howard nervous. This inquiry was reasonable to assure officer safety as Humphrey continued to inquire about Bonner.  Howard responded that there might be a pistol in the car, possibly in the glove compartment.  Humphrey asked for permission to search for or retrieve the pistol. Howard consented.  At this point, there was no gun drawn and the officer was talking calmly to Howard.  The court finds that consent was knowingly and voluntarily given by Howard to search for the pistol.

Humphrey asked Howard to step out of the car and Silcox proceeded to search the vehicle for the pistol.  It is not clear if Humphrey continued to question Howard during this time.  After approximately five minutes, Silcox saw bags on the back passenger seat and asked for permission to search the bags.  Howard declined to consent to the search of the bags.  Humphrey read Howard her rights and asked her why she wouldn't consent to the search of the bags.  Howard immediately confessed that there was "dope" in the bags.  At this point,

Howard had been detained approximately 12-15 minutes.

The court finds that the short detention between attempting to retrieve a pistol for officer safety and the time that Howard confessed to a crime did not violate Howard's right to be free of unwarranted seizure. At this point, Howard had confessed to knowing that Bonner was a fugitive and that she was assisting Bonner in order for Bonner to avoid apprehension by law enforcement. Humphrey also knew that Howard was picking up another fugitive who had been found in possession of methamphetamine.

Considering the totality of the circumstances, the court finds that Humphrey had articulable reasonable suspicion to detain Howard to question her about her assistance to Bonner and her participation in picking up Inman. Both of these actions could constitute crimes; i.e. harboring or assisting a fugitive and aiding a person in avoiding arrest. Thus, it was reasonable for an officer to believe Howard was engaged in criminal activity. *Evans v. Stephens*, 407 F.3d 1272, 1280 (11th Cir. 2005)("Whether an officer has a reasonable suspicion is an objective question viewed from the standpoint of a reasonable police officer at the scene.") Accordingly, Howard's motion to suppress the evidence resulting from the stop is DENIED.

**DONE** and **ORDERED** this 20th day of September 2016.

> s / Kristi K. DuBose
> **KRISTI K. DuBOSE**
> **UNITED STATES DISTRICT JUDGE**